IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HARPER ENTERPRISES, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 08-0225-CV-W-ODS |
| PIAGGIO GROUP AMERICAS, INC., | ) |
| Defendant. | ) |

ORDER AND OPINION (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) STRIKING THE PRETRIAL CONFERENCE AND TRIAL SETTINGS, AND (3) EXTENDING THE TIME FOR DEFENDANT TO FILE A MOTION FOR SUMMARY JUDGMENT

Pending, *inter alia*, is Plaintiff's Motion for Summary Judgment. The Court concludes the Record does not support an entry of judgment as a matter of law in Plaintiff's favor; to the contrary, the Court tends to believe the Record supports summary judgment for Defendant – but Defendant did not seek summary judgment. All the Court can do at this juncture is deny Plaintiff's Motion for Summary Judgment (Doc. # 22).

I. BACKGROUND

Ordinarily, the Court deems it unnecessary to engage in a lengthy discussion of the facts when a summary judgment motion is denied. This case is unique in that (1) it is scheduled for a bench trial, (2) this case is related to a prior case over which the undersigned presided, (3) much of the evidence is based on documents and not the assessment of witness' credibility, and (4) one of the major issues – attorney fees – is a matter that Missouri law recognizes as being uniquely within a judge' expertise.

In February 2004, Plaintiff filed suit against Aprilia World Service USA, Inc. ("Aprilia), Defendant's predecessor, alleging a variety of claims arising from the parties' business relationship. One of the claims asserted Aprilia failed to deliver certain

motorcycle parts to Plaintiff. Aprilia merged into Defendant in January 2006. On April 26, 2007, Plaintiff filed a Notice of Settlement. The settlement required Defendant to (1) pay Plaintiff $251,500 within ten days of the agreement, (2) "zero out" all parts accounts, warranty claims, and other claims arising from the parties' business relationship, and (3) continue their dealership agreement. The settlement also called for Defendant to deliver

> the obsolete parts substantially conforming to the parts list agreed to by the parties in the Fall of 2005 and which were packaged by Aprilia at that time for delivery to Harper's (as further evidenced in photographs emailed by Aprilia's counsel to Harper's counsel on April 26, 2007); delivered in "as is" condition, with no express or implied warranties or representations made as to their condition, fair market value, or suggested retail value. Shipping costs to be paid by Harper's.

Difficulties developed because the boxes Defendant believed to contain the parts in question contained different items (in some cases, they did not even contain motorcycle parts). A dispute developed between the parties as to the enforceability of the settlement. On May 5, 2007, the Court issued an Order enforcing the agreement, concluding

> the Settlement Agreement executed on April 26, 2007, is valid and enforceable. With respect to paragraph E(2), Defendant is obligated to provide the parts identified on the list agreed to by the parties in the Fall of 2005. If Defendant cannot do this, Defendant is obligated to provide Plaintiff with parts that substantially conform to those identified on the list agreed to by the parties in the Fall of 2005. With respect to any parts Defendant cannot supply or substitute for, Defendant must pay Plaintiff the monetary amount assigned to those parts on the parties' list from the Fall of 2005.

This decision was affirmed on appeal. Harper Enterprises, Inc. v. Aprilia World Service USA, Inc., No. 07-2500 (8th Cir. Mar. 21, 2008).

One week after the Court of Appeals issued its opinion – but approximately two and a half weeks before the Court of Appeals issued its Mandate – Plaintiff filed the instant suit. Billing records offered by Plaintiff's counsel in an effort to recover fees demonstrate work began on this lawsuit the very same day the Eighth Circuit's Order

was issued – indicating little desire or interest on Plaintiff's part to allow Defendant time to comply with the Eighth Circuit yet-to-be-issued Mandate. The sole count of the Complaint[1] asserted Defendant had breached the Settlement Agreement by failing to "provide[ ] any of the monetary or non-monetary consideration called for by the Settlement Agreement, even though the Prior Action has been dismissed, and the Order enforcing the Settlement Agreement has been affirmed on appeal." Complaint, ¶ 8. On April 1, 2008, Defendant's counsel (Christopher Belter) contacted Plaintiff's counsel (Dan Owen)[2] and advised Defendant had gathered the parts it was required to deliver and stood ready to make the necessary payment. Belter Affidavit, ¶ 4. The next day, Belter e-mailed Owen reiterating Defendant's readiness to deliver the parts and money and requested (1) wiring instructions for the funds and (2) a timetable for delivery of the parts. Belter Affidavit, ¶ 5. Having received no response, Belter sent another e-mail to Owen.

What then ensued was a strange exchange of e-mails and letters,[3] with Defendant attempting to provide the parts or their equivalent, and Plaintiff refusing to consider equivalent parts (even though the Court's May 5, 2007, Order expressly permitted Defendant to provide parts that "substantially conform" to the parts listed) or to accept less than all of the parts instead of a combination of parts and money (again, even though the Court's May 5, 2007, Order expressly permitted this course). Defendant conceded it did not have all the parts and did not have equivalent replacements for all those it did not have, and acknowledged it would provide the cash equivalent for those that were missing. Defendant was even willing to ship the parts to

---

[1]Plaintiff sought permission to file an Amended Complaint, which was granted on October 1, 2008, with directions that Plaintiff electronically file the Amended Complaint within ten calendar days. The Amended Complaint was not filed, so the operative pleading remains the original Complaint.

[2]The attorneys originally involved in this case were the same ones involved in the prior litigation. New counsel entered an appearance for Plaintiff in February 2009 and new counsel entered an appearance for Defendant in November 2008.

[3]All e-mails and letters referenced herein are part of the Record and have been reviewed by the Court.

3

Plaintiff so it could inspect them, but Owen declined to provide an address for the parts to be shipped to and refused to arrange for an inspection of the parts. The Court also notes Defendant's communications were cordial and professional, while Plaintiff's seem unnecessarily aggressive.

On October 14, 2008, Plaintiff filed a Motion for Summary Judgment. The motion alleges Defendant (1) owes prejudgment interest on the $251,500 (which had already been paid on April 17, 2008 – two days after Owen provided delivery instructions for the check), (2) failed to deliver the identical parts identified in the settlement and thus owed prejudgement interest on their value, (3) failed to zero out Plaintiff's accounts or treat Plaintiff the same as other dealers, and (4) owed Plaintiff attorney fees.

Plaintiff alleged Defendant "never acknowledged the continued validity of the 1984 Motorcycle Dealership Agreement in writing," but the Settlement Agreement does not require this to be done. The Settlement Agreement states the acknowledgment is made by virtue of the parties' execution of the Settlement Agreement. Plaintiff's only claim is that Defendant breached the Settlement Agreement. The Complaint does not assert a claim for breach of the parties' 1984 Motorcycle Dealership Agreement.[4]

With respect to Plaintiff's accounts, Defendant took no steps to collect any bills that were to be "zeroed out." However, an external website accessible to the dealers was not adjusted in accordance with the Settlement Agreement until November 2008.

In November 2008, Plaintiff – having finally agreed to allow Defendant to ship the parts to its facility for inspection – examined the parts Defendant proposed to provide. All the parts were ultimately accepted. Some parts were not available and no suitable replacement could be provided; Defendant paid Plaintiff $33,137.20 as the value for these parts.[5]

---

[4]For its part, Defendant alleges Plaintiff breached the agreement. The issue is beyond the scope of the pleadings.

[5]Defendant contends it actually overpaid and Plaintiff is obligated to return $3,362.20.

Defendant disputed any obligation to pay prejudgement interest on the $251,500. Nonetheless, on December 12, 2008, it paid Plaintiff $22,595.15 to resolve that aspect of the case.

Defendant's response to the Motion for Summary Judgment was filed on January 23, 2009. Plaintiff filed Reply Suggestions in support of its original motion on February 25, 2009, and its focus was narrowed significantly. Plaintiff did not respond to Defendant's suggestions that any purported breaches were cured; instead, Plaintiff focused on its claims for (1) interest for the delay in complying with the obligation to deliver parts, (2) attorney fees for successfully defending the appeal and (3) bringing this lawsuit.

## II.  DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

A.  Non-Issues

Several issues are moot and no longer part of the case.  Plaintiff's claim for the $251,500 and interest for the delayed payment is moot because those monies have been paid.  Plaintiff's claim for specific performance of Defendant's obligation to provide parts is moot, as the Record demonstrates Plaintiff has accepted a combination of parts and cash.  Plaintiff's claim regarding Defendant's obligation to zero-out its accounts is moot because this has been done.  Finally, Plaintiff has not identified evidence or a factual dispute indicating Defendant breached the dealership agreement.  In all these respects, the Court also notes Plaintiff appears to have abandoned its efforts to obtain relief on these claims.

B.  Prejudgment Interest

There are several reasons to deny Plaintiff's request for prejudgment (or "predelivery") interest on the "parts obligation."  First and foremost is the lack of any legal basis for such an award.  The Settlement Agreement does not discuss interest.  It also does not establish a deadline by which the parts obligation was to be fulfilled.  Recognizing this, Plaintiff relies on section 408.020 of the Revised Missouri Statutes to provide the legal basis for an interest award.  This statute provides for recovery of interest at the rate of 9% per year when no rate is agreed upon "for all moneys after they become due and payable, on written contracts, and an accounts after they become due and demand for payments is made . . . ."  The Court concludes the statute is inapplicable as a matter of law.

Generally, the common thread in the statute – and the many cases construing it – is that the statute applies when money owed is not paid.  Here, the Settlement Agreement did not require payment of money – it required delivery of parts.  The statute does not permit an award of prejudgment interest based on the "value" of unperformed non-monetary obligations.

6

Confirming this observation is the requirement that the amount of the debt be unliquidated. "Under Missouri law, prejudgment interest ordinarily is denied if the claim is not liquidated because 'where the person liable does not know the amount he owes he should not be considered in default because of failure to pay.'" United States for Use and Benefiot of Conner Universal Co., Inc. v. Dimarco Corp., 985 F.2d 954, 959 (8th Cir. 1993) (quoting Fohn v. Title Ins. Corp. of St. Louis, 529 S.W.2d 1, 5 (Mo. 1975) (en banc)); see also Trinity Products, Inc. v. Burgess Steel, L.L.C., 486 F.3d 325, 336 (8th Cir. 2007). The amount due is liquidated if it is "fixed and determined, readily determined, or ascertainable by computation." Far East Services Corp. v. Tracker Marine, L.L.C., 246 S.W.3d 486, 507 (Mo. Ct. App. 2007); see also Children Int'l v. Ammon Painting Co., 215 S.W.3d 194, 203-04 (Mo. Ct. App. 2006); American Laminates, Inc. v. J.S. Latta Co., 980 S.W.2d 12, 24 (Mo. Ct. App. 1998). Here, Defendant had at most a contingent obligation to pay money: contingent upon not having the parts and contingent upon also not having substantially similar parts. Defendant's monetary obligation ranged anywhere from zero to the full value of all the parts – and this amount was not fixed until the parties reached some sort of an agreement as to whether the substituted parts were adequate. The Settlement Agreement did not contain a clear mechanism for them to make this determination, and until this matter was resolved Defendant's obligation to pay was at best unliquidated (and at most non-existent). The statute does not apply in this case.

Finally, the equities do not favor an award in Plaintiff's favor. "Consideration of equitable principles of fairness and justice is appropriate when awarding prejudgment interest." Insurance Co. of N. Am. v. Skyway Aviation, Inc., 828 S.W.2d 888, 892 (Mo. Ct. App. 1992) (citing Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 7 (Mo. 1987) (en banc)); see also Springfield Land & Development Co. v. Bass, 48 S.W.3d 620, 634 (Mo. Ct. App. 2001). This allows a court to impose an interest award even if the statute does not apply, but only if the equities of the situation demand it. McKinney v. State Farm Mut. Ins. Co., 123 S.W.3d 242, 251-52 (Mo. Ct. App. 2003). Here, Plaintiff instituted suit before the judgment confirming the Settlement Agreement's validity was final. Defendant endeavored to work with Plaintiff in an effort to satisfy its obligation to

7

provide the parts are acceptable substitutes, but these efforts were rebuffed. Even if the suit was necessary, the Record suggests Plaintiff was primarily responsible for the delay in Defendant's delivery of parts. In these circumstances, equity does not support imposition of an interest obligation.

### C. Attorney Fees

The Settlement Agreement contains the following attorney fee provision:

> In the event any future legal action is brought to enforce the terms of this Agreement, or in which the provisions of this Agreement are raised as a defense to any claim asserted, the prevailing party in such action shall be awarded its reasonable attorneys' fees, costs, and expenses incurred in such action.

The Court refused to award Plaintiff the fees incurred to enforce – and resist Defendant's effort to rescind – the Settlement Agreement because Plaintiff did not document the fees incurred. See Order dated May 25, 2007, page 5, fn. 3. Plaintiff now seeks the fees it incurred (1) defending the appeal from the May 25, 2007, Order, and (2) prosecuting this case.

### 1. Fees Incurred on Appeal

The Court admits to some difficulty with respect to this claim, primarily because it has received little attention from either party. The issue is not specifically referenced in the Complaint, but a very charitable reading suggests it can be included in the general allegation that Defendant had "not provided any of the monetary or non-monetary consideration called for by the Settlement Agreement." Complaint, ¶ 8. Plaintiff's Summary Judgment Motion does not specifically parse out attorney fees incurred in the appeal. The brief discussion of damages asserts Plaintiff's damages include "attorneys' fees and costs incurred during the Agreement enforcement litigation and the present case" and seeks over $252,000 in total. The supporting affidavit suggests this figure

8

includes the time spent in this Court litigating the enforceability issue, Owen Affidavit, ¶¶ 5-7 – even though the Court has already denied a request for those fees. The billing records from between the May 25, 2007 Order and the Eighth Circuit's March 21, 2008 Opinion include a wide variety of matters that do not appear related to the Appeal, and Plaintiff has not made any effort to parse out exactly what is being claimed for that work.

The Court declines to enter summary judgment for Plaintiff for three reasons. First, the Court is not completely convinced a claim for fees incurred during the appeal is included in the Complaint. Second, the supporting records are insufficient to allow an amount to be assessed: the time entries related to the appeal are not identified, and there is nothing to permit the Court to conclude, as a matter of law, that the attorneys in question are entitled to be compensated at the rates alleged. Third, even if a claim has been asserted, and even if Plaintiff properly documents its request, the Court may decline to award any fees if it believes the amount of the claim is so unreasonable that no award should be granted.[6]

### 2. Fees Incurred in this Lawsuit

Plaintiff's efforts to recover fees related to this lawsuit suffer from some of the same evidentiary problems discussed above. In addition, the Record does not establish Plaintiff is entitled to a fee award. So far, it is hard to characterize Plaintiff as a "prevailing party." More importantly, even if Plaintiff can be technically described as a prevailing party, the circumstances alluded to throughout this Order may make an award inappropriate.

---

[6]There is another issue that has not been addressed: is this the appropriate forum to request fees from the appeal? Eighth Circuit Rule 47C says that a motion for attorney fees on appeal should be filed with the Court of Appeals, which may refer the matter to the trial court for consideration. In the context of a fee-shifting statute, the Eighth Circuit has held this Rule is not the exclusive means by which fees incurred on appeal may be awarded and that the request can be initiated in the District Court. Little Rock School Dist. v. Arkansas, 127 F.3d 693 (8th Cir. 1997). The Court presumes the rationale applies equally to fees awarded pursuant to a contractual agreement, but has found no authority to confirm the point.

9

"Although attorney's fees are generally allowed when authorized by contract . . . the question of whether to award such fees is left to the broad discretion of the trial court." Building Erection Services Co. v. Plastic Sales & Mfg. Co., 163 S.W.3d 472, 480 (Mo. Ct. App. 2005); see also McDonald's Corp v. Sandbothe, 814 S.W.2d 665, 671 (Mo. Ct. App. 1991). Moreover, the fees awarded must be reasonable and compensation is not allowed for efforts that are unnecessary or unjustified. By extension, then, no fees should be awarded if the litigation as a whole is unnecessary.

The Court has made numerous observations suggesting this lawsuit was not necessary. A more detailed discussion of the issue is appropriate at this juncture.

Plaintiff consistently attempts to justify the lawsuit because Defendant did not fulfill its obligations under the Settlement Agreement. Plaintiff conveniently ignores the fact that the validity of the Settlement Agreement was under attack and was not finally resolved until the Eighth Circuit's Mandate issued. Defendant could not be faulted for waiting until the matter was fully resolved in the courts before complying with Settlement Agreement, and preparing and filing this lawsuit *before* the issue was legally resolved was unnecessary.

The course of communications demonstrate Defendant attempted to comply with its obligations shortly after the Eighth Circuit issued its ruling. This effort was made before Defendant even knew about the lawsuit – further demonstrating the suit was not necessary and that Plaintiff cannot legitimately claim the suit "caused" Defendant's compliance. Defendant's efforts were rebuffed, largely based on Plaintiff's misinterpretation of Defendant's obligations. As noted several times throughout this Order, Defendant was not obliged to supply all the parts in question – and Plaintiff's continued insistence on receiving all the parts or "all the money" was unjustified and unnecessarily prolonged resolution of the matter.

Plaintiff makes much of Defendant's invitation that Plaintiff inspect or pick up the parts at Defendant's premises, which it characterizes as a breach of the Settlement Agreement's requirement that Plaintiff deliver the parts. Plaintiff contends the suit was necessary to make Plaintiff abide by its obligation to deliver the parts. The Record does not support this characterization. The suit was filed before any discussion between the

10

parties was had – so Plaintiff cannot claim the suit was filed because Defendant refused to deliver the parts. Moreover, Defendant did not refuse to deliver the parts, and the course of communications demonstrates this was not the issue in dispute. Defendant was proposing methods for the parties to evaluate whether certain substitute parts were satisfactory – but Plaintiff rejected these efforts. Offering Plaintiff an opportunity to inspect the parts before they were shipped was just one of several accommodations proposed.

### D. Future Proceedings

The Record does not support Plaintiff's request for summary judgment. It may support summary judgment for Defendant, but Defendant has not requested it.[7] The state of the record and the nature of the remaining issues suggests a trial is probably unnecessary in this case. The evidence for the remaining issues is documentary, and factual matters are to be decided by the Court. Therefore, in order to save the parties (and the Court) further expenditure of time and other resources, it is hereby ordered as follows:

1. The Pretrial Conference and the Trial are canceled, and will be rescheduled at a later time if necessary.

2. On or before May 18, 2009, Plaintiff shall file a motion for an award of attorney fees incurred during the appeal in the prior case. Plaintiff shall take steps necessary to make sure the request is properly documented and that it is reasonable; failure to provide the necessary supporting information or an attempt to treat this process as an "opening bid" for fees will result in the claim being rejected.

---

[7]Defendant has filed a motions to strike the requests for attorney fees and interest, asserting some of the arguments the Court has recognized. Striking these requests is not the appropriate remedy, and those motions (Doc. # 51 and Doc. # 56) are denied without prejudice. The motions for additional time to respond to those motions (Doc. # 52 and Doc. # 58) are denied as moot.

11

3. On or before May 18, 2009, Defendant shall file a Motion for Summary Judgment on the remaining claims in this case.

4. Because of the work already done on these issues and the nature of the issues involved, notwithstanding the provisions of the Local Rules, responses to these motions shall be filed on or before June 8, 2009. Reply Suggestions shall be filed on or before June 22, 2009.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: April 28, 2009　　　　　　　　　　UNITED STATES DISTRICT COURT